IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PRIME INCOME ASSET MANAGEMENT §
CO., INC., et al., §
§
                    Plaintiffs, §
                               § Civil Action No. 3:07-CV-0102-D
VS. §
§
WATERS EDGE LIVING LLC, et al., §
§
                    Defendants. §

MEMORANDUM OPINION
AND ORDER

Plaintiffs move to remand this removed action, presenting
questions concerning improper joinder, whether jurisdiction can be
based on the realignment of one of the defendants, and whether this
case should be treated as an interpleader action, requiring only
minimal diversity. Concluding that it lacks subject matter
jurisdiction because the parties are not completely diverse, the
court remands this case to state court.[1]

I

This lawsuit arises out of a dispute among a group of co-
insured entities over the proper allocation of $100 million in
Hurricane Katrina-related insurance proceeds. Plaintiffs Prime
Income Asset Management Co., Inc. ("Prime Income"), Continental

---

[1]There are other pending motions that the court need not
reach, including a motion to dismiss for lack of personal
jurisdiction, a motion to strike a supplemental appendix filed in
support of the motion to dismiss, a motion for leave to file the
supplemental appendix, two motions to take judicial notice, and a
joint motion for extension of deadlines in scheduling order. The
court need not decide these motions.

Poydras Corporation ("Poydras"), Continental Common, Inc. ("Common"), and Continental Baronne, Inc. ("Baronne") sue defendants Waters Edge Living LLC and Waters Edge JW, LLC (collectively, "Waters Edge," except as otherwise noted) and Liberty Bankers Life Insurance Company ("Liberty"), asserting claims for tortious interference and breach of contract against Waters Edge and seeking a declaratory judgment under the Texas Declaratory Judgments Act ("TDJA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-37.011 (Vernon 1997), that would resolve the parties' respective rights to the disputed funds on a *pro rata* basis according to loss. Prime Income, Poydras, Common, and Baronne are citizens of Nevada and Texas (Nevada corporations with their principal places of business in Dallas). Waters Edge Living LLC and Waters Edge JW, LLC are Florida citizens. Liberty is a citizen of Oklahoma and Texas (Oklahoma corporation with its principal place of business in Dallas). Complete diversity is lacking because there are Texas citizens on both sides of the case.

According to plaintiffs' state-court original petition ("petition"), Prime Income is a real estate advisor to Poydras, Common, Baronne, Waters Edge, and Liberty (the "co-insured parties"). The co-insured parties suffered combined Hurricane Katrina-related damages estimated between $150-$200 million. Pet. ¶ 10. Prime Income obtained $100 million in insurance coverage for the advised parties under policies issued by Lloyds of London ($10

- 2 -

million), Westchester Specialty Insurance Company ($10 million), and RSUI Indemnity ("RSUI") ($80 million). In addition to a declaratory judgment, plaintiffs seek damages from Waters Edge for tortious interference with plaintiffs' collection and distribution of the proceeds. They allege that Waters Edge caused over $30 million to be paid into a trust account under the control of the United States District Court for the Northern District of Florida. Pet. ¶ 22. Although not specifically mentioned in the "Causes of Action" portion of plaintiffs' petition, defendant Liberty is incorporated by reference as a "co-insured party" under plaintiffs' claim for declaratory relief and their related factual allegations. *Id*. at ¶ 13.

Waters Edge removed the case based on diversity of citizenship, contending that the court should disregard Liberty's Texas citizenship because it is improperly joined. Plaintiffs move to remand, asserting that Liberty is properly joined and that the court lacks subject matter jurisdiction.

II

A defendant may remove a case to federal court based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332 and 1441. Diversity jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978). This means that no plaintiff can be a citizen of the same state as even one defendant.

"When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc).  If a defendant has been improperly joined, the citizenship of that party is disregarded for purposes of the diversity jurisdiction analysis.  Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiffs are unable to establish a cause of action against the non-diverse defendant in state court.  *Id.* at 573 (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).  Under the second alternative (the one that is at issue in this case),

> the test for fraudulent joinder is whether the defendant has demonstrated that there is *no possibility of recovery* by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

*Id.*(emphasis added).[2]  There are two "proper means for predicting whether a plaintiff has a reasonable basis of recovery under state

_____

[2]Although plaintiffs appear to have initially and erroneously pleaded that Liberty is a Florida LLC, *see* Pet. ¶ 7, Waters Edge does not appear to rely on a theory of actual fraud in the pleading of jurisdictional facts.  Instead, Waters Edge relies on the second basis for establishing improper joinder and on realignment, both of which the court addresses and rejects below.

law." *Id.*[3] "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether it states a claim under state law against the in-state defendant." Under a Rule (12)(b)(6)-type analysis, the court construes plaintiffs' complaint in the light most favorable to them, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court does not, however, 'rely upon conclusional allegations or legal conclusions that are disguised as factual allegations.'" *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (quoting *Jeanmarie v. United States*, 242 F.3d 600, 602-03 (5th Cir. 2001)). "'Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d

---

[3]"A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).

322, 324 (5th Cir. 1999) (per curiam) (Rule 12(c) decision).

"Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. But in cases where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id*. The decision to conduct such an inquiry rests within the discretion of the trial court and "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. In its discretion, the court declines to conduct such a summary inquiry. But as the court notes below, even if it were to "pierce the pleadings" and consider the evidence already adduced by the parties, this would not alter the result.

### III

In their motion to remand, plaintiffs posit that Liberty is not improperly joined because the declaratory relief requested, if granted, may require Liberty to return insurance proceeds it may have received and to which Liberty contends it is entitled. They maintain that their interests are therefore adverse to those of Liberty and Waters Edge, and that Liberty is properly aligned as a defendant. According to plaintiffs, this constitutes a justiciable controversy that is ripe for consideration under the TDJA, and

Waters Edge has failed to meet its heavy burden of demonstrating that there is no possibility of recovery against Liberty. Plaintiffs also deny any "close affiliation" with Liberty, and they argue that the evidence that Waters Edge has adduced demonstrates that Prime Income and Liberty are not in fact controlled by a common owner. Plaintiffs also contend that they neither advise nor control Liberty, cannot force Liberty to sue Waters Edge, and have no authority to act on Liberty's behalf.[4]

Waters Edge presents three related (but potentially independent) arguments in opposition to the motion to remand.[5] First, Waters Edge appears to contend that Liberty is so closely affiliated with Prime Income that it should be realigned as a plaintiff in order to permit removal, presumably because its ultimate interest in the case is indistinguishable from Prime Income's. Second, it posits that Liberty is improperly joined because plaintiffs' petition fails to allege facts detailing the substance of any current controversy between Prime Income and Liberty that would justify declaratory relief. Third, Waters Edge

---

[4]According to the record, Poydras, Common, and Baronne have delegated decisionmaking authority to Prime Income. Prime Income, however, has no such delegated authority from Liberty.

[5]It is not clear from Waters Edge's brief whether it is presenting an independent argument that Liberty should be realigned in order to permit removal, or suggesting that Liberty should be realigned merely as a consequence of improper joinder, or both. The court proceeds as if both arguments are made and addresses them *infra* at § IV (A) and (B).

contends that plaintiffs' lawsuit is more properly characterized as an interpleader action, for which only minimal diversity is required. The court rejects all three arguments.

IV

A

The court first addresses Waters Edge's argument that Liberty should be realigned as a plaintiff in order to permit removal based on complete diversity.

Waters Edge devotes a significant portion of its opposition brief to establishing the closeness of the relationship between Prime Income and Liberty, ostensibly in support of its argument that Liberty should be realigned as a plaintiff. It posits that Prime Income and Liberty are both ultimately owned by Gene E. Phillips ("Phillips"), either through an entity known as the May Trust——a trust established for the benefit of Phillips' children——or through other companies that Phillips owns and/or controls. Waters Edge posits that both Prime Income and Liberty are represented by the same law firm, and that this "common ownership and dual representation may explain why Plaintiffs have failed to perfect service or take any action to pursue claims against Liberty." Ds. Br. 3. Waters Edge also suggests that Prime Income performs management functions for Liberty; that they share common officers, employees, and a principal place of business in Dallas, Texas; and that Liberty's Chief Executive Officer and

Director is Phillips' son, and a beneficiary of the May Trust.[6]  It posits that, at a minimum, Prime Income has assumed management and control over Liberty's Hurricane Katrina-related insurance claims, has asserted claims on Liberty's behalf, and has purportedly received insurance funds on behalf of Liberty.  Waters Edge maintains that Liberty is part of a larger enterprise that includes the plaintiff entities and is ultimately owned and controlled by Phillips.  Waters Edge concludes that Liberty should be aligned with plaintiffs for purposes of determining diversity jurisdiction, because they are legally inseparable from Prime Income.

Waters Edge has not shown that realignment of Liberty is procedurally proper under circumstances such as these, where the case was removed based on improper joinder.  Although in a case originally filed in a federal forum the court is generally permitted to determine diversity jurisdiction by "'look[ing] beyond the pleadings, and arrang[ing] the parties according to their sides in the dispute,'" at least two federal courts—including this one—have expressed serious doubts about the propriety of realigning parties to permit removal, and as an alternative to

---

[6]Waters Edge also contends that the Kansas Commissioner of Insurance recognized the close affiliation between Liberty and Prime Income when it concluded that Liberty could not do business with any entity advised or controlled by Phillips without prior authorization, and that it could not invest in any such affiliated company.  Moreover, Liberty's Chief Financial Officer and its Secretary also serve as directors, officers, and employees of Prime Income and affiliates Poydras, Common, and Baronne.

traditional improper joinder analysis. *Roblez v. Ramos*, 2001 WL 896942, at *3 (N.D. Tex. Aug. 1, 2001) (Fish, J.) (quoting *City of Indianapolis v. Chase Nat'l Bank of N.Y.*, 314 U.S. 63, 69 (1941)). In *Roblez* the removing defendants asked the court to realign the parties to reflect their "true interest" in the case, which would have resulted in complete diversity.

> The *Roblez* court explained that the competing interests of the plaintiff's (mostly unlimited) right to choose his forum against the defendant's (conditional) right to a federal forum are generally resolved through the doctrine of fraudulent joinder. The fraudulent joinder doctrine tries to strike a reasonable balance among not rewarding abusive pleading by the plaintiff, the plaintiff's tactical prerogative to select the forum, and the defendant's right to remove . . . . If a defendant can remove, on diversity grounds, a case properly filed in state court without——at the same time——shouldering (what the case law describes as) the *heavy* burden of showing fraudulent joinder, this balance will obviously be upset.

*Washington v. Ernster*, 2007 WL 307028, at *4 (E.D. Tex. Jan. 29, 2007) (discussing and quoting *Roblez*, 2001 WL 896942, at *3) (internal citations and quotation marks omitted) (emphasis in original). The realignment inquiry, in contrast, asks "whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side." *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 (5th Cir. 1984). "This test is meant to ensure that there is an actual, substantial, controversy between citizens of different states, all of whom on one side of the controversy are

citizens of different states from all parties on the other side."
*Id.* (citations and internal quotation marks omitted).

Applying the rationale of *Roblez* and *Washington*, the court declines to hold that realignment to permit removal is procedurally proper when a defendant has relied on improper joinder to remove a case based on diversity jurisdiction. This would impermissibly enable a removing defendant to substitute an "ultimate interest" test for the typically more onerous burden imposed by the doctrine of improper joinder.

But even assuming *arguendo* that realignment is procedurally proper, the court would still reject Waters Edge's contentions. This is because Waters Edge fails adequately to support its realignment argument with relevant authority, or to offer any basis for questioning the application of the *Roblez* rationale. Waters Edge's single citation to *De La Hoya v. Coldwell Banker Mexico, Inc.*, 125 Fed. Appx. 533 (5th Cir. 2005), is inapposite and does not affect the court's decision. In *De La Hoya* the Fifth Circuit did not address any potential realignment of parties; it considered whether the removing defendants had met their burden of establishing that there was no reasonable basis to predict the plaintiffs' possible recovery against a named defendant under the "single business enterprise" corporate veil-piercing doctrine. *Id.* at 538. Waters Edge has failed adequately to establish the relevance or applicability of the "single business enterprise"

veil-piercing doctrine to the instant circumstances, and it has not adequately discussed, much less established, the elements of that doctrine.

Accordingly, the court holds that Waters Edge's realignment argument lacks force, and it declines to realign Liberty as a plaintiff for the purpose of deeming the case removable.

B

The court next addresses Waters Edge's argument that there is no reasonable basis to predict that plaintiffs might be able to obtain declaratory relief adverse to Liberty.

In addition to the arguments discussed above concerning the alleged closeness of the relationship between Waters Edge and Prime Income, Waters Edge contends that plaintiffs' petition fails to allege facts detailing the substance of any current controversy between plaintiffs and Liberty that warrants declaratory relief. Waters Edge relies, *inter alia*, on *American National Insurance Co. v. Cannon II*, 86 S.W.3d 801 (Tex. App. 2002, no pet.), in which the court stated the requirement that a party to a suit to declare rights under a contract must demonstrate the presence of "ripening seeds of controversy," and it posits that plaintiffs have failed to meet this burden. *Id.* at 806 (*citing City of Waco v. Tex. Natural Res. Conservation Comm'n*, 83 S.W.3d 169, 175 (Tex. App. 2002, no pet. h.)). They contend that certain documents that Prime Income has produced suggest that no payments have been made to Liberty,

and that this undermines plaintiffs' position that Liberty may be required to repay insurance proceeds. Waters Edge argues in the alternative that because Prime Income provided any funds that Liberty received, Prime Income would be precluded under Texas law from recovering any of the funds under the "voluntary-payment rule."[7] The court disagrees.

Regardless whether Liberty has received any insurance proceeds, the court is unable to say that there is no reasonable basis to predict that plaintiffs might be able to obtain declaratory relief adverse to Liberty in a Texas court. The TDJA affords Texas courts the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code § 37.003. The stated purpose of the TDJA "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id*. at § 37.002(b). Moreover, "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A

---

[7]Under Texas law, the voluntary-payment rule is a defense to claims asserting unjust enrichment. The rule has been stated as follows: "'[M]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability.'" *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (citing *Pennell v. United Ins. Co.*, 243 S.W.2d 572, 576 (1951)).

declaration does not prejudice the rights of a person not a party to the proceeding." *Id.* at § 37.006(a).

The court recognizes that although Texas courts liberally construe the TDJA, they limit its application to cases in which there is an actual case or controversy between the parties. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). Thus "[a] declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Id.* (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 779-80 (Tex. App. 1982, writ ref'd n.r.e.) (citations omitted). Texas courts do not have the authority to render "advisory opinions," *Patterson v. Planned Parenthood of Houston & Southeast Texas, Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) (citations omitted), and therefore may not review "hypothetical or contingent situations, or determine questions not currently essential to the decision of an actual controversy," *Firemen's Insurance Co. of Newark v. Burch,* 442 S.W.2d 331, 333 (Tex. 1968). "A person seeking a declaratory judgment need not have incurred actual

injury; a declaratory judgment action will lie if the facts show the presence of 'ripening seeds of a controversy.'" *Tex. Natural Res. Conservation Comm'n*, 83 S.W.3d at 175 (citations omitted).

Applying the highly deferential improper joinder standard, the court is unable to say that there is no reasonable basis to predict that plaintiffs might be able to obtain a declaratory judgment adverse to Liberty in a Texas court. Plaintiffs allege that "[a] dispute has arisen among the co-insured parties over the proper division of insurance proceeds." Pet. ¶ 13. According to the statement of facts in plaintiffs' petition, Liberty, along with Poydras, Common, Baronne, and Waters Edge, is defined as a "co-insured" party. *Id.* at ¶ 12. Accepting these allegations as true and considering them in a light favorable to plaintiffs, they are at least minimally sufficient to state a claim for declaratory relief under the TDJA. According to the well-pleaded facts, an actual dispute——as opposed to a hypothetical or contingent one——exists between the co-insured parties over their respective entitlement to certain Hurricane Katrina-related insurance proceeds. Although the precise contours of the alleged dispute are somewhat unclear, this mere lack of pleading specificity does not permit the court to conclude that there is no reasonable basis to predict that plaintiffs might be able to obtain declaratory relief adverse to Liberty in a Texas court. Moreover, the disputed issue of whether Liberty has already received some portion of the

insurance proceeds is not determinative of the existence of an actual controversy. If, as Waters Edge contends, Liberty has not received any of the proceeds, plaintiffs may be entitled to declaratory relief concerning their respective entitlement to the proceeds. And assuming *arguendo* that Liberty has received some portion of the proceeds, this would not necessarily establish that plaintiffs cannot obtain declaratory relief. Waters Edge has not met its burden of showing that the voluntary-payment rule would bar recovery, and, in any case, the voluntary-payment rule would not bar recovery of any other funds not yet distributed by Prime Income to Liberty.

The court is similarly unpersuaded that the alleged "close affiliation" between Prime Income and Liberty establishes as a matter of law that there is no reasonable basis to conclude that plaintiffs may be able to obtain declaratory relief adverse to Liberty under the TDJA. As noted, even if the court were to "pierce the pleadings" and consider the evidence that the parties have adduced, it would still hold that Waters Edge has failed to meet its heavy burden. The mere fact that two corporate entities are "closely affiliated" is not of itself sufficient to establish that there is no actual, justiciable controversy between them.[8]

---

[8]Moreover, as discussed above, the court declines to apply an "ultimate interest" test to a case in this procedural posture. Instead, the court applies the traditional improper joinder analysis.

Moreover, Waters Edge has failed adequately to show that Prime Income and Liberty are so closely related as to eliminate their separate identities for purposes of their ability to bring actions against each other.  In the parent-subsidiary context, at least one federal appeals court has noted that

> [c]orporations may bring actions against each other, even if . . . one corporation is the parent or subsidiary of the other.  It is true that the law sometimes disregards separate corporate forms in order to hold one accountable for the actions of another, especially when a failure to do so would work fraud or injustice.  [But] before it can be found that a parent and subsidiary are one entity in the eyes of the law, it must first be determined whether the subsidiary is in fact controlled by the parent.

*Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 846 (D.C. Cir. 2002) (citations and quotation marks omitted).  As noted, plaintiffs have presented evidence that Prime Income has decisionmaking authority for all co-plaintiffs (Poydras, Common, and Baronne), but does not have such authority regarding Liberty.  Plaintiffs also cite proof that Phillips does not control Liberty or have any direct role in the company.  This lends further support to the court's conclusion that Waters Edge has failed to meet its heavy burden of showing that there is no reasonable basis to conclude that plaintiffs may be able to obtain declaratory relief adverse to Liberty under the TDJA.  Given the state of the evidence, the court is unable to conclude—even conducting a "pierce the pleadings" analysis—that Texas courts would find that

Prime Income and Liberty are legally inseparable, such that the existence of an actual, justiciable controversy between them is impossible.[9]

C

Finally, the court considers Waters Edge's contention that plaintiffs' lawsuit is more properly characterized as an action in interpleader, for which only "minimal diversity" is required.

Waters Edge posits that it is undisputed that the instant action principally concerns a dispute over the distribution of insurance proceeds that have been deposited in an account under the supervision of the United States District Court for the Northern District of Florida, Tallahassee Division. It contends that under these circumstances, the court should apply the "minimal diversity" requirement set out in 28 U.S.C. § 1335, pursuant to which federal subject matter jurisdiction exists if, *inter alia*, there are at least two adverse claimants of diverse citizenship of different states and the amount in controversy exceeds $500. Waters Edge contends in the alternative that because this action involves claims to monies that have been deposited in an account under the control of the Northern District of Florida, subject matter

---

[9]The court does not deem it necessary or jurisdictionally proper to permit any further briefing and presentation of evidence. *See Smallwood,* 385 F.3d at 574 ("We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity.").

jurisdiction can be premised on Fed. R. Civ. P. 22 and 67.   It

argues that because RSUI (a defendant in the Florida suit) is a

citizen of New Hampshire and Georgia, and the putative claimants

(Prime Income, Poydras, Common, Baronne, Liberty, and Waters Edge)

are not, subject matter jurisdiction is proper under Rules 22 and

67, which only require diversity between the potential claimants

and the stakeholder.   The court disagrees.

Waters Edge could not properly raise new grounds for removal

by post-removal amendment of its original notice of removal.

Neither can it do so in its opposition to plaintiffs' motion to

remand.

> The power to amend pleadings to show
> jurisdiction is controlled by 28 U.S.C.
> § 1653.   Section 1653 does not allow the
> removing party to assert additional grounds of
> jurisdiction not included in the original
> pleading.  The petition may be amended only to
> set out more specifically grounds for removal
> that already have been stated, albeit
> imperfectly, in the original petition; new
> grounds may not be added and missing
> allegations may not be furnished.

*Iwag v. Geisel Compania Maritima*, *S.A.*, 882 F. Supp. 597, 601 (S.D.

Tex. 1995) (citations, quotation marks, citations, and some

parentheticals and parentheses omitted).   Federal courts will

generally "disallow amendments to notices of removal that present

grounds for removal not included in the original notice."  *Iwag*,

882 F. Supp. at 601 (citing *Stafford v. Mobile Oil Corp.*, 945 F.2d

803 (5th Cir. 1991); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490

U.S. 826 (1989) (additional citations omitted)). Similarly, the court will not permit a removing defendant to defeat a remand motion by relying in its opposition on grounds for removal not included in its original or amended notice of removal. Waters Edge removed this case based on improper joinder. *See* 2d Am. Notice of Removal at 8 ("Pursuant to 28 U.S.C. §§ 1332 and 1441, this Court has original subject matter jurisdiction over this cause, because there is complete diversity between the properly joined Defendants and Plaintiffs . . . ."). Waters Edge cannot now premise removal on 28 U.S.C. § 1335 or Rules 22 and 67. Therefore, assuming *arguendo* that subject matter jurisdiction could be premised on the grounds that Waters Edge now offers, the court will not consider them because they are improperly raised.

Moreover, even if Waters Edge's interpleader-related contentions were properly raised, the court would reject them for another reason. As an initial matter, Rules 22 and 67 are procedural rules that govern interpleader actions and cannot—as Waters Edge appears to contend—serve as an independent basis for the court's exercise of subject matter jurisdiction. Rule 22 interpleader actions require some other federal statutory basis for jurisdiction—in this case, complete diversity between the claimants and the stakeholder. *See, e.g. Aetna Cas. & Sur. Co. v. Ahrens*, 414 F. Supp. 1235, 1253 (S.D. Tex. 1975) (noting that "complete diversity is required for proper jurisdiction in Rule 22

interpleader actions . . . ."). But the alleged diverse stakeholder (RSUI) is not a party to this suit and has not deposited funds in the court's registry. Accordingly, there is no basis for concluding that Rule 22 interpleader supports subject matter jurisdiction.

Neither does statutory interpleader support subject matter jurisdiction. Congress has conferred upon the district courts original subject matter jurisdiction "of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property the value of $500 or more . . . ." 28 U.S.C. § 1335(a). Waters Edge correctly notes that statutory interpleader under § 1335(a), unlike Rule 22 interpleader, does not require complete diversity between the claimants and the stakeholder. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) (noting that § 1335 "has been uniformly held to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants . . . ."). The burden is on the party seeking interpleader to establish that an interpleader action is justified. *See Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974). Waters Edge has failed to meet this burden. It has not shown that this lawsuit for declaratory relief, breach of contract, and tortious interference is a statutory interpleader action, and it has not demonstrated that any

stakeholder has deposited or even intends to deposit any funds in the court's registry. *See* 28 U.S.C. § 1335(a)(2) (providing that statutory interpleader requires that plaintiff deposit funds into court registry or give bond payable to clerk of court). Thus Waters Edge has failed to show either that Rule 22 or statutory interpleader is proper in this case.

IV

Plaintiffs request that the court award them attorney's fees pursuant to 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citing *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)). The court concludes that there was an objectively reasonable (albeit erroneous) basis for Waters Edge to remove this case on the basis that plaintiffs failed adequately to allege an actual controversy between themselves and Liberty. Accordingly, it denies plaintiffs' request for attorney's fees.

*    *    *

Plaintiffs' March 1, 2007 motion to remand to state court is granted because this court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). This action is remanded to the 192nd Judicial

District Court of Dallas County, Texas.  The clerk shall effect the remand in accordance with the usual procedure.

**SO ORDERED.**

August 3, 2007.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE